Opinion issued December 21, 2006











 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00063-CR






HERIBERTO LEIJA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1015205




 

MEMORANDUM OPINION


 Appellant, Heriberto Leija, was charged by indictment with aggravated
robbery, enhanced by a prior conviction for felony possession of a firearm. See Tex.
Pen. Code Ann. § 29.03 (Vernon 2003). Appellant pleaded not guilty to the primary
offense and pleaded "not true" to the enhancement. A jury found appellant guilty as
charged, found the enhancement paragraph true, and assessed punishment at 30 years'
confinement.

 In two points of error, appellant contends that he was denied effective
assistance of counsel and that the trial court erred by admitting evidence of an
extraneous offense.

 We affirm.Background

 On the evening of November 30, 2004, the complainant, Juan Garza, drove to
Tampico Refresqueria, a snack stand near his house. After he parked, but before he
got out of his car, a Jeep pulled in alongside the passenger side of Garza's car and
parked diagonally. Garza heard someone in the Jeep call out his brother's nickname,
"Chuy!" Garza turned and saw the driver of the Jeep and the front-seat passenger
pointing handguns at him, a passenger in the back seat pointed a 12-gauge shotgun
at him.

 Although it was night, there was sufficient artificial lighting in the parking lot
for Garza to clearly see the front-seat passenger, later identified as appellant, holding
a black and grey pistol. Appellant leaned over the driver and said, "B----, give me
your s---." Fearing for his life, Garza complied. The driver got out of the Jeep,
walked up to Garza's open passenger window and took Garza's property. Appellant
then tried to shoot at Garza, but the gun malfunctioned. The gunmen then drove
away.

 Garza followed the Jeep, calling 911 from his cellular telephone. Garza lost
the Jeep, but flagged down Officer Salazar, of the Houston Police Department
("HPD"), who was en route to Tampico in response to Garza's call. Garza and
Officer Salazar spoke on the side of the road. Officer Salazar then returned to
Tampico, but could not find any witnesses. Garza was unable to identify any of the
perpetrators at that time. The case was assigned to HPD Officer Pena for
investigation, but the case was "put on a back burner" because there were no 
suspects.

 In late January of 2005, Garza was waiting to pick up a friend at the home of
his wife's friend, Nancy Cordero, when appellant and Cordero's cousin, Felipe Isaac
Apodaca, arrived in a Ford Expedition. Cordero testified that she was talking with
Apodaca when Garza, who was angry, came over to the Expedition. Cordero did not
testify as to any of the details of the interaction. Cordero testified that Garza later
told her that he "could get a cop to get them locked up, and within two days." 
Cordero also testified that she did not report Garza's alleged statement to police and 
that she did not want her cousin, Apodaca, to go back to jail. Garza denies having
had any interaction with appellant or Apodaca and denies having made any statement
to Cordero about filing a false police report.

 Days later, on January 23, 2005, Garza was driving to a gas station near his
home when he was chased by the same Expedition that he had seen at Cordero's
house. During the chase, Garza made a sharp U-turn and passed back beside the
Expedition. Garza saw appellant driving and recognized him as a former classmate. 
The passenger, later identified as Apodaca, shot at Garza.

 Garza called police, but could not recall appellant's full name. Officer Mejia,
an HPD robbery investigator, developed appellant as a suspect based on the
information Garza could recall and created a photo-spread. Garza identified appellant
as the passenger in the Jeep who had attempted to shoot him during the robbery on
November 30, 2004 and as the driver during the January 23, 2005 aggravated assault.

 Officer Mejia obtained an arrest warrant for appellant. Officer Mejia, along
with several other officers, executed the warrant at appellant's home on February 23,
2005. During the arrest, Officer Mejia seized a .40-caliber pistol from a bedroom. 

 After appellant's arrest, Garza identified appellant as the perpetrator in a live
line-up. Officer Mejia videotaped the line-up and the video was admitted into
evidence and published to the jury. At trial, Garza testified that the gun looked the
same as the one that appellant used in the robbery. The pistol was admitted into
evidence without objection.

Assistance of Counsel

 In his first point of error, appellant contends that he received ineffective
assistance of counsel because his trial counsel (1) failed to file a motion to suppress
and failed to object to the admission of the firearm recovered during appellant's
arrest; (2) failed to conduct a meaningful voir dire; and (3) failed to raise a single
objection during the entire trial, other than to the introduction of the extraneous
evidence complained of in appellant's second point of error. 

 Appellant was entitled to reasonably effective assistance of counsel. U.S. 
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
(1) that counsel's performance fell below an objective standard of reasonableness and
(2) that "there is a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different." Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159
S.W.3d 98, 101-02 (Tex. Crim. App. 2005). "Reasonable probability" means a
"probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104
S. Ct. at 2068. 

 To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence. Robertson, 187 S.W.3d at 483. Appellant must overcome the strong
presumption that counsel's conduct falls within the wide range of reasonable
professional assistance or might reasonably be considered sound trial strategy. Id. at
482.

 As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Id. at 483-84. We consider the
adequacy of assistance as viewed at the time of trial, not through hindsight. Id. at
482. Allegations of ineffectiveness must be firmly founded in the record. Bone v.
State, 77 S.W.3d 828, 833 & n.13 (Tex. Crim. App. 2002). We cannot speculate as
to the reasons supporting counsel's behavior.  Id. at 836. Normally, the record on
direct appeal is undeveloped and will not be sufficient to show that counsel's
representation was so deficient as to overcome the presumption that counsel's
conduct was reasonable. Id. at 833. A failure to make a showing under either prong
of the Strickland standard defeats a claim of ineffective assistance of counsel. 
Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). 

 1. Failure to move to suppress and failure to object to the firearm 

 Appellant contends that his counsel was ineffective because he failed to file a
motion to suppress the firearm that was seized during appellant's arrest and failed to
object to its admission into evidence at trial. Specifically, appellant contends that
"the firearm should have been suppressed" because (1) "[t]he officer testified that
[appellant] was not in the room where the firearm was recovered" and (2) "[t]he
officers were executing an arrest warrant for [appellant], not a search warrant." 

 A failure to file pre-trial motions does not categorically constitute ineffective
assistance of counsel. Johnson v. State, 176 S.W.3d 74, 79 (Tex. App.--Houston [1st
Dist.] 2004, pet. ref'd). To satisfy his burden under Strickland, appellant is required
to show that a motion to suppress would have been granted. See Jackson v. State, 973
S.W.2d 954, 957 (Tex. Crim. App. 1998). Appellant must produce evidence that
defeats the presumption of proper police conduct and must develop facts and details
sufficient to conclude that an invalid search was conducted. See id.

 Here, the record shows that five to seven officers executed an arrest warrant for
appellant at appellant's house, that Officer Mejia knocked on the door and announced
himself as a police officer, that a man opened the door, that the officers went in, that
there were four male occupants in the house, and that the officers arrested appellant. 
As appellant contends, Officer Mejia testified that, "[a]t the time [he] recovered the
pistol, there was nobody in that room." However, Officer Pena testified that he
observed the firearm "on the ironing board" in, what he believed was, "the same room
that [appellant] was in." Simply showing that there may be questions surrounding the
execution of an arrest warrant is not sufficient to defeat the presumption of proper
police conduct. See id. The record is not sufficiently developed to demonstrate that
an invalid search was conducted. See id.

 Appellant complains that the seizure of the firearm was improper because the
arrest warrant was not a search warrant. The record shows that the police officers
seized a firearm, which was apparently in plain view, while executing an arrest
warrant concerning an allegation involving a weapon, at a home with multiple
occupants. Appellant has not offered any evidence to defeat the presumption that the
police acted properly. See id.

 We conclude that appellant has not satisfied his burden to show that a motion
to suppress the firearm would have been granted. See id. 

 Appellant further complains that counsel was ineffective because he failed to
object to the admission of the firearm at trial. However, appellant has not shown that
an objection would have been meritorious. In addition, the record is silent concerning
counsel's reasons for the lack of objection. See Bone, 77 S.W.3d at 833 & n.13. 
Hence, appellant has failed to overcome the presumption that counsel's conduct falls
within the wide range of reasonable professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482; Gibbs v. State,
7 S.W.3d 175, 175 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). 



 2. Length of voir dire

 Appellant contends that his defense was prejudiced in that his counsel only
conducted voir dire for ten minutes and failed to question veniremembers about
identification or the defense of alibi.

 The Texas Court of Criminal Appeals has held that a "ten minute voir dire" by
defense counsel does not render assistance of counsel per se ineffective. Jackson v.
State, 491 S.W.2d 155, 156 (Tex. Crim. App. 1973). Similarly, here, appellant has
not shown that the mere brevity of his counsel's voir dire was per se prejudicial. 

 We consider the circumstances of the case. Robertson, 187 S.W.3d at 482. As
appellant points out, this was a two-and-one-half-hour trial. The record shows that
defense counsel's voir dire followed a 40-minute voir dire by the State in which the
State explained that it has the burden of proof; that jurors must be fair and impartial;
that jurors may choose to believe or disbelieve any portion of the testimony; and that
jurors may not consider whether the defendant testifies. In addition, the trial court
fully admonished the panel as to the presumption of innocence. Defense counsel
questioned the veniremembers as to their ability to apply the minimum range of
punishment, whether any of them had been crime victims, and whether any
veniremember would give higher weight to police testimony. 

 Appellant seems to contend that he was prejudiced in his defense because his
counsel's voir dire should have been lengthier, but appellant alleges only two general
omissions by defense counsel, as follows: failure to ask any questions regarding
identification and failure to question veniremembers as to his or her ability to "follow
the law regarding alibi." Appellant does not specifically state what should have been
asked nor does he show how a failure to ask such questions prejudiced his defense. 
The jury may have simply chosen to disbelieve appellant's witnesses. 

 We conclude that appellant has not met his burden to affirmatively prove that
his defense was prejudiced and has not shown that there is reasonable probability
that, but for the alleged errors, the result of the proceeding would have been different. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Mitchell v. State, 68 S.W.3d 640,
644 (Tex. Crim. App. 2002). 

 3. General failure to object throughout trial

 Appellant contends that he was prejudiced in his defense because his counsel
generally failed to object throughout trial. However, appellant does not point to any
specific place in the record, other than to the admission of the firearm addressed
above, in which his counsel failed to enter an objection. Thus, appellant has not
shown how any specific failure to object prejudiced his defense. See Thomas v. State,
886 S.W.2d 388, 391-93 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd).

 We conclude that appellant has not shown the requisite prejudice under the
second prong of the Strickland standard. Strickland, 466 U.S. at 687, 104 S. Ct. at
2064. Hence, we need not consider the first prong of Strickland, whether defense
counsel's performance was deficient on these points. See Rylander, 101 S.W.3d at
110-11; Boyd v. State, 811 S.W.2d 105, 109 (Tex. Crim. App. 1991) (holding that,
when appellant fails to meet prejudice prong, reviewing court need not address
question of counsel's performance on these points). We hold that appellant has not
met his burden to show ineffective assistance of counsel by a preponderance of the
evidence. See Robertson, 187 S.W.3d at 483. Accordingly, appellant's first point of
error is overruled. 

Extraneous Offense

 In his second point of error, appellant contends that the trial court erred by
admitting evidence of an extraneous aggravated assault allegedly committed by
appellant on January 23, 2005. Specifically, appellant contends that the evidence was
not relevant and was unfairly prejudicial. 

A. The Applicable Law and Standard of Review

 Evidence is relevant if it has any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable than
it would be without the evidence. Tex. R. Evid. 401. Evidence of extraneous
offenses is not admissible to prove the character of the person in order to show action
in conformity therewith. Tex. R. Evid. 404(b). However, evidence of other crimes,
wrongs, or acts may be admissible for purposes such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id.
Even if admissible under rule 404(b), evidence must be excluded if "its probative
value is substantially outweighed by the danger of unfair prejudice." Tex. R. Evid.
403.

 Relevant evidence may be admitted to rebut a defensive theory. Moses v. State,
105 S.W.3d 622, 626 (Tex. Crim. App. 2003). For instance, an extraneous offense
may be admissible to show identity when identity is at issue in the case. Johnson v.
State, 68 S.W.3d 644, 651 (Tex. Crim. App. 2002). Generally, to be admissible to
show identity, an extraneous offense must be so similar to the offense charged as to
mark the offenses as the accused's handiwork. Id. at 650-51; see Thomas v. State,
126 S.W.3d 138, 144 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd).

It is within the trial court's discretion to determine whether extraneous
evidence has relevance apart from character conformity and whether the danger of
unfair prejudice outweighs the probative value of the evidence. Moses, 105 S.W.3d
at 627; Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.--Houston [1st Dist.] 2000,
pet. ref'd). We review the trial court's determination as to the admissibility of
evidence under an abuse of discretion standard. Roberts, 29 S.W.3d at 600. If the
trial court's ruling lies within the zone of reasonable disagreement, we will affirm. 
Id. 



B. Analysis

The record shows that appellant placed his identity at issue by propounding an
alibi defense. See Hughes v. State, 962 S.W.2d 89, 92 (Tex. App.--Houston [1st
Dist.] 1997, pet. ref'd). Appellant introduced in his case-in-chief the testimony of
appellant's girlfriend, Daniella Garza, that appellant could not have been the
perpetrator of the aggravated robbery at issue because he was at home with Daniella
all day and all night on the date of the offense. This defense was subject to rebuttal
by the State, if the evidence complied with Rules 404(b) and 403. See Blackwell v.
State, 193 S.W.3d 1, 10 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd).

To rebut appellant's defense that Garza did not properly identify appellant as
the perpetrator, the State introduced extraneous offense evidence that, on January 23,
2005, while Garza was driving to a gas station near his home, he was chased by
persons in an Expedition. Garza clearly saw appellant and Apodaca. During the
chase, Apodaca shot at Garza. The trial court admitted the extraneous offense for the
purpose of considering, inter alia, the identification of appellant as the perpetrator.

1. Rule 404(b)

Appellant contends that the extraneous offense admitted into evidence was not
relevant because it did not make a fact of consequence more or less probable. 
Specifically, appellant contends that the only fact at issue was whether Garza engaged
in a dispute with appellant at the gathering at Cordero's house. Appellant contends
that, because the extraneous offense occurred after the gathering at Cordero's house,
it has no probative value to aid the jury in determining the events that occurred at
Cordero's house. 

The events at Cordero's house were not the only facts at issue. By calling
Daniella to testify that she was with appellant the entire day and night of November
30, 2004, appellant sought to establish that someone other than appellant committed
the robbery. As the State contends, the record supports the trial court's finding that
the extraneous offense evidence was relevant because the evidence was probative of
the issue of identity. See Tex. R. Evid. 404(b). Appellant does not argue the
dissimilarity between the extraneous offense and the charged offense. Instead, he
concedes that the extraneous offense and the charged offense are similar in nature and
complains that they are so similar, in fact, that the evidence ultimately fails a Rule
403 balancing. 

We conclude that the extraneous offense evidence was relevant because it was
probative of identity in that it made it more probable that appellant was properly
identified as the perpetrator. 

2. Rule 403

 Although evidence is admissible under rule 404(b), it may be excluded if the
trial court finds that "its probative value is substantially outweighed by the danger of
unfair prejudice." Tex. R. Evid. 403. In making this determination, the court
considers (1) how compellingly the evidence serves to make more or less probable
a fact of consequence, (2) the potential for the evidence to impress the jury in some
irrational but indelible way, (3) how much trial time the proponent needs to develop
the evidence, and (4) how great is the proponent's need for the evidence. See Mozon
v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Jaggers v. State, 125 S.W.3d
669, 670 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). Relevant evidence is
presumed to be admissible and Rule 403 authorizes a trial court to exclude such
evidence only when there is a "clear disparity between the degree of prejudice of the
offered evidence and its probative value." Mozon, 991 S.W.2d at 847.

Here, the trial court could have reasonably concluded that the evidence
compellingly serves to make more probable that Garza's identification of appellant
as the person who robbed him was accurate. The potential for the evidence to
impress the jury in an irrational but indelible way was not significant because the trial
court instructed the jurors to limit their consideration of that evidence to the issues
of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident." We must presume that the jury followed the instruction when,
as here, no evidence has been presented to rebut that presumption. See Thrift v. State,
176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The extraneous offense evidence was
offered only on rebuttal and the time taken to develop the testimony was not
excessive. Finally, the trial court could have reasonably concluded that the State's
need for the evidence was significant because the evidence explained the
circumstances under which Garza positively identified appellant as the perpetrator. 

We conclude that the trial court did not abuse its discretion in determining that
the probative value of the evidence was not outweighed by the danger of prejudice.
See Moses, 105 S.W.3d at 627. 

In sum, we hold that the trial court did not abuse its discretion in admitting the
extraneous evidence of the prior aggravated assault. Accordingly, we overrule
appellant's second point of error. 

Conclusion

 We affirm the judgment of the trial court.




 Laura Carter Higley

 Justice



Panel consists of Justices Nuchia, Jennings, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).